UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                              :
JOSE JIMENEZ,                                 :
                                              :
                          Plaintiff,          :        18 Civ. 7273 (LGS)
                                              :
            -against-                         :        **OPINION AND ORDER**
                                              :
THE CITY OF NEW YORK,                         :
                                              :
                          Defendant.          :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Jose Jimenez, currently detained at Great Meadow Correctional Facility in Comstock, New York, brings this action under 42 U.S.C. § 1983 against Defendant the City of New York (the "City"), alleging unconstitutional conditions of confinement and deliberate indifference to his medical needs. Defendant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the following reasons, Defendant's motion is granted in part and denied in part.

I.  BACKGROUND

The following facts are taken from the Complaint, documents integral to the Complaint and documents of which the Court may take judicial notice.[1] *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 781 n.1 (2d Cir. 2019); *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.

---

[1] Plaintiff filed his medical records in support of his Complaint, stating in a cover letter that the records applied to this pending case. Plaintiff also attached the records as exhibits to his opposition to Defendant's motion. While the records are not directly referenced in the Complaint, the Court finds they are integral to it, and the parties do not dispute their relevance. *See Xiao Qing Liu v. New York State Dep't of Health*, No. 16 Civ. 4046, 2017 WL 3393944, at *4 (S.D.N.Y. Aug. 7, 2017) (considering plaintiff's medical records in connection with defendant's motion to dismiss, where plaintiff relied heavily on the records in the amended complaint).

2010) ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (internal quotation marks omitted)).

On December 6, 2014, Plaintiff entered the Rikers Island Correctional Facility ("Rikers Island"), where he had several medical examinations, including a test for tuberculosis ("TB") administered by Correctional Health Services ("CHS") medical staff. On a medical intake form, Plaintiff stated that he had never had active TB, had no history of positive "Tuberculin Skin Test[s]," had no history of TB symptoms and no recent exposure to TB. On December 8, 2014, medical staff informed Plaintiff that he had tested positive for exposure to TB, and scheduled a follow-up chest x-ray for him. Medical staff also offered him an antibiotic treatment, but Plaintiff refused, citing worries of unnecessary liver damage, and requested to wait for the x-ray results. On December 14, 2014, medical staff determined from Plaintiff's chest x-ray that he was negative for TB and communicated this to him. The x-ray showed "no significant change when compared to [an earlier x-ray] exam of 11/17/2011," per Plaintiff's medical records. Because the test results were normal, Plaintiff's appointment to review the results was canceled.

After this initial testing, between January 2015 and April 2015, at least three other detainees in Plaintiff's housing unit in Rikers Island were diagnosed with TB, and at least two of them refused treatment. In March 2015, Plaintiff and at least two detainees, who he suspected had TB, were transferred with a large group to a separate Brooklyn detention complex. The two detainees "again tested positive for tuberculosis." In April 2015, the same group was transferred back to Rikers Island and placed in one housing facility. Another detainee at that time "tested positive for being exposed to tuberculosis," confirming Plaintiff's suspicions of TB infection within his housing group. "At this point [P]laintiff had no idea how many other detainees were

exposed to tuberculosis or any other communicable diseases since [P]laintiff was in a dormitory with numerous other detainees [with and without active TB]." The Complaint alleges that Plaintiff and the other detainees "were subjected to poor ventilation, issues with showers and bathrooms, and [were] required to sleep in close proximity to each other." Medical staff examined Plaintiff on April 8, 2015, for hypertension, and his medical records state that Plaintiff showed several indicators of good health, and his lungs were "clear to auscultation" and had "no wheezes/rhonchi/rales." Plaintiff was required to return in three months for a hypertension follow-up.

On June 11, 2015, Plaintiff returned to CHS "out of concern of the growing number of detainees that tested positive for tuberculosis as well as [the] Hepatitis A and B virus." Plaintiff "inquir[ed] about symptoms of TB because he claim[ed] there [were] patient[s] in his housing area taking TB medication, [although] he denie[d] any weight loss, fever, nightsweat or cough." While medical staff allegedly refused to perform any kind of test on Plaintiff, Plaintiff's medical records state, regarding Plaintiff's expressed concerns, that "[t]here is no radiographic evidence of tuberculosis. . . . Normal chest radiograph. No evidence of active tuberculosis. There is no significant change when compared to the exam of 11/17/2011." The next day, on June 12, 2015, during a hypertension follow-up appointment, Plaintiff's lungs were deemed "clear to auscultation bilaterally . . . no wheezes or crackles . . . no rebound or guarding." Medical staff told Plaintiff that he should not worry about TB unless he "develop[ed] a fever, coughing, night sweats, bloody or yellowish phlegm."

On June 30, 2015, Plaintiff and his entire housing group were relocated to Manhattan Detention Complex, where Plaintiff complained again to CHS medical staff about "hypertension, back pain and concern of contracting tuberculosis and hepatitis A and B, based on the conditions

and circumstances of being housed with infected detainees." On July 27, 2015, upon transfer to Downstate Correctional Facility, Plaintiff underwent a series of medical examinations during intake. Medical records show that Plaintiff tested positive on two QuantiFERON tests for TB exposure, one on July 31, 2015 and the other on August 4, 2015. On August 12, 2015, medical staff informed Plaintiff of these results, and Plaintiff initially refused treatment.

On August 13, 2015, Plaintiff was transferred to Great Meadow Correctional Facility. Plaintiff was treated for TB between August 2015 and August 2016. He began a TB treatment on August 31, 2015. During this time, "[P]laintiff could not have any contact with [his] . . . family[,] leading to depression, and emotional distress because of the inadequate medical care." Plaintiff did not show side any effects from treatment until March 4, 2016, when medical staff put the treatment temporarily on hold due to "elevated LFT's" (liver function tests), and indications of "negative[] [effects on] [P]laintiff's liver." His TB treatment resumed with a different drug on April 7, 2016, when his LFT's had returned to normal. Plaintiff completed TB treatment on August 11, 2016.

According to the Complaint, "New York City jails are infested with various contagious diseases because . . . [D]efendant does not adhere or follow the New York City Health Code or the New York State Sanitary Code and it is a widespread practice or informal custom." Plaintiff contends that he contracted TB because of his conditions of confinement while housed at Rikers Island, and that Defendant was deliberately indifferent to his serious medical needs by allowing him to be exposed to the disease and by delaying treatment.

## II. LEGAL STANDARDS

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d

86, 93 (2d Cir. 2019). The Court accepts as true all the non-moving party's well-pleaded factual allegations and draws all reasonable inferences in favor of this party. *Id*. To survive a 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A pro se litigant's papers must be construed "liberally to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation mark omitted); *accord Perkins v. Perez*, No. 17 Civ. 1341, 2020 WL 248686, at *4 (S.D.N.Y. Jan. 16, 2020).

### III. DISCUSSION

Liberally construed, the Complaint asserts two separate claims under 42 U.S.C. § 1983: (1) that Defendant was deliberately indifferent to Plaintiff's conditions of confinement, resulting in Plaintiff contracting TB, and (2) once Plaintiff contracted TB, that Defendant was deliberately indifferent to Plaintiff's medical needs by providing insufficient and delayed treatment. For the following reasons, Defendant's motion is granted in part and denied in part.

"Section 1983 itself creates no substantive rights," but "provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *accord Dames v. Pigott*, No. 18 Civ. 8352, 2019 WL 4014102, at *3 (S.D.N.Y. Aug. 26, 2019). To state a § 1983 claim, "a plaintiff must allege (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (internal quotation

5

mark omitted); *accord Luck v. Westchester Med. Ctr.*, No. 17 Civ. 9110, 2020 WL 564635, at *5 (S.D.N.Y. Feb. 4, 2020).

Where, as here, the only defendant is a municipality, Plaintiff must plead allegations that "the government body *itself* 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978) (emphasis added)); *accord Fleming v. City of New York*, No. 18 Civ. 4866, 2019 WL 4392522, at *8 (S.D.N.Y. Aug. 27, 2019). Municipal defendants are liable under § 1983 only if (1) that defendant officially promulgated or adopted an official policy to that effect, *see Monell*, 436 U.S. at 690; (2) an official responsible for establishing a final policy with respect to the subject matter in question made a deliberate choice to that effect, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); (3) subordinate officials engaged in "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks omitted); or (4) Defendants failed to train or supervise their employees to a degree that evinces a "deliberate indifference to the rights of persons with whom [Defendant] come[s] into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *accord Fleming*, 2019 WL 4392522, at *8. A plaintiff must also plausibly allege that there is a "direct causal link between municipal policy or custom and the alleged deprivations." *Canton*, 489 U.S. at 385; *accord Fleming*, 2019 WL 4392522, at *8.

A. Deliberate Indifference to Conditions of Confinement Claim

Plaintiff does not specify whether he was a pretrial detainee or a convicted prisoner during the times relevant to his allegations, and therefore whether his deliberate indifference

6

claims arise under the Eighth or Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Accordingly, these claims are assessed under the more lenient standards of the Fourteenth Amendment. *See Rutherford v. Correct Care Solutions, LLC, et al.*, No. 18 Civ. 12049, 2020 WL 550701, at *5 (S.D.N.Y. Feb. 4, 2020) (analyzing pro se plaintiff's deliberate indifference claim under the Fourteenth Amendment, where it was unclear from the amended complaint whether plaintiff was a pretrial detainee or a convicted prisoner).

To establish a claim for deliberate indifference to conditions of confinement under § 1983, a plaintiff must allege two prongs: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . perhaps better classified as a '*mens rea* prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Because Plaintiff names only a municipal defendant, the *mens rea* prong collapses into whether Plaintiff has alleged sufficient facts establishing municipal liability under *Monell*. *See Narvaez v. City of New York*, No. 16 Civ. 1980, 2017 WL 1535386, at *6-9 (S.D.N.Y. Apr. 17, 2017).

### 1. Objective Prong: Sufficiently Serious Conditions

The Complaint alleges facts that, if true, show conditions that were sufficiently serious to constitute an objective deprivation of Plaintiff's due process rights. While there is no "static test" to determine a sufficiently serious deprivation, "the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The challenged conditions, "either alone or in combination, [must] pose an unreasonable risk of serious damage to [a plaintiff's] health." *Darnell*, 849 F.3d at 30. Some conditions may rise to the level of a constitutional violation "in

combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seller*, 501 U.S. 294, 304 (1994) (internal quotation mark omitted); *see Darnell*, 849 F.3d at 23-26 (finding that facts in combination showed sufficiently serious conditions, including overcrowding, unusable toilets, garbage and inadequate sanitation, infestation, lack of toiletries and other hygienic items, inadequate nutrition, extreme temperatures and poor ventilation, deprivation of sleep and crime and intimidation).

The Complaint alleges that Plaintiff was housed with at least three other detainees whom he suspected had TB, two of whom refused treatment for it; that Plaintiff was transferred to and housed with these detainees at least three times in other facilities, despite certain detainees being re-tested. Further, the Complaint alleges that, during this period, Plaintiff and others "were subjected to poor ventilation, issues with showers and bathrooms, and [were] required to sleep in close proximity to each other." In their moving papers, Defendants have not addressed these conditions of confinement as alleged by Plaintiff, nor have they argued no risk of serious harm from housing detainees with active TB with those without it.

While the parties dispute whether Plaintiff tested positive for TB exposure at some point before he entered Rikers Island, there is no dispute that Plaintiff was tested for TB when he arrived there in December 2014; that the test results were determined to be negative; that Plaintiff then had multiple appointments with CHS medical staff where he complained of his conditions of confinement, but showed no signs of TB symptoms; and that, eventually, on July 31, 2015 and August 4, 2015, Plaintiff tested TB positive and was then treated for TB. Accordingly, Plaintiff's allegations that he was housed with inmates with active TB who were not taking medication suffices at this stage to show that he faced the objectively serious risk of

harm of contacting TB. *See Ford v. Aramark*, No. 18 Civ. 2696, 2020 WL 377882, at *7 (S.D.N.Y. Jan. 23, 2020) (concluding that pro se plaintiff's allegation that he was forced to sleep in a cell with no heat, with a ventilation system blowing cold air, while supplied with just a blanket, was sufficient to show that he faced an objectively serious risk of harm); *Narvaez*, 2017 WL 1535386, at *6 (concluding that pro se plaintiff's allegation that the City housed him with inmates with active TB who were not taking medication was sufficient to show that he faced an objectively serious risk of harm).

### 2. Subjective Prong: Municipal Liability

Construed broadly, the Complaint alleges municipal liability in two ways: (1) that Defendants have failed to train or supervise their employees to ensure that conditions of confinement at New York City jails are such that detainees with active TB are not housed with those without it, or alternatively (2) that while no official policy was promulgated, Defendant has unofficially sanctioned an unconstitutional custom or practice related to conditions of confinement at New York City jails. The Complaint sufficiently alleges municipal liability under the second theory only.

To allege a city has failed to train or supervise its employees such that its inadequate training reflects "deliberate indifference to [a] constitutional right[]," *Canton*, 489 U.S. at 392, a plaintiff must show (1) that the municipality knows "to a moral certainty" that its employees will confront a given situation; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that the wrong choice by the employee "will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009); *accord DiPippo v. Cty. of Putnam*,

No. 17 Civ. 7948, 2019 WL 1004152, at *14 (S.D.N.Y. Feb. 28, 2019). To resolve municipal liability in this context, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on [Defendant]," *Canton*, 489 U.S. at 391, and instead, Plaintiff must plead facts suggesting "a likelihood that the failure to train or supervise will result in the officer making the wrong decision." *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992); *accord Narvaez*, 2017 WL 1535386, at *7.

The Complaint is insufficient to support the failure to train theory because it seems to allege a failure to train or supervise CHS medical staff, rather than staff in charge of Plaintiff's housing assignment. Without allegations that the medical staff was responsible for Plaintiff's housing, these allegations are insufficient. *See Rutherford v. Westchester Cty.*, No. 18 Civ. 4872, 2020 WL 433841, at *13 (S.D.N.Y. Jan. 28, 2020) (concluding that pro se plaintiff's allegations regarding deliberate indifference in failing to train or supervise were insufficient where plaintiff failed to allege specific facts suggesting deficiencies in municipal training or supervision protocols).

The second theory of municipal liability -- that Defendant engaged in a policy or custom of deliberate indifference to conditions of confinement -- is sufficiently pleaded to sustain the claim against the City. This theory requires allegations of "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127 (internal quotation marks omitted); *accord Fleming*, 2019 WL 4392522, at *8. A plaintiff may state a claim of municipal liability where the facts alleged suggest that defendant's noncompliance with a policy is widespread and therefore "that a municipality's actual policies were different from the ones that had been announced."

*Praprotnik*, 485 U.S. at 131; *accord Doe v. City of New York*, No. 15 Civ. 0117, 2018 WL 6095847, at *2 (S.D.N.Y. Nov. 21, 2018). To plausibly allege a policy or custom, a plaintiff must provide some factual support that is probative of a widespread or repeated occurrence, including "a series of decisions by a subordinate official . . . of which the supervisor must have been aware." *Praprotnik*, 485 U.S. at 130; *accord Ortiz v. City of New York*, No. 15 Civ. 5732, 2016 WL 6902477, at *2 (S.D.N.Y. Nov. 23, 2016).

The Complaint alleges that "New York City jails are infested with various contagious diseases because [D]efendant does not adhere [to] or follow the New York City Health Code or the New York State Sanitary Code and it is a widespread practice or informal custom"; that "[P]laintiff and others were subjected to poor ventilation, issues with showers and bathrooms, and detainees [were] required to sleep in close proximity to each other"; that despite detainees being diagnosed with and refusing TB treatment, Plaintiff "remained with the tuberculosis infected detainees th[r]ough three moves to different areas or housing facilities despite the fact some of the detainees tested positive for tuberculosis from December 2014 until August of 2015"; and that at least one other detainee, in addition to Plaintiff, contracted TB during the process of being repeatedly housed with other detainees who had tested positive for TB. Plaintiff's opposition papers note that he was "forced to house with other inmates who had tuberculosis . . . [despite] [D]efendant's knowledge of such," and his sur-reply states that "[D]efendant's attitudes, conduct and policies were less than adequate. Their non-aggressive approach to health care of inmates through their policies and program are evident in how they house inmates infected with or exposed to tuberculosis with those inmates that are not." The Complaint alleges that Plaintiff repeatedly expressed concerns about his conditions of confinement to Defendant's employees throughout this time period.

11

Taken as true and drawing all inferences in Plaintiff's favor, these allegations are sufficient to show a policy or custom regarding the conditions under which detainees are housed, based on multiple incidents alleged by Plaintiff where Defendant continued to house detainees with active TB with others who had not previously tested positive, including Plaintiff and other detainees. *See Narvaez*, 2017 WL 1535386, at *9 (concluding that pro se plaintiff's allegations that New York City jails were infested with contagious diseases, that the City did not follow the New York City Health Code or the New York State Sanitary Code, that subordinates knew that inmates had active TB and still decided to house them together on three different occasions were sufficient to plead that the City had a *de facto* custom or practice); *Ford*, 2020 WL 377882, at *13 (concluding that dismissal of pro se plaintiff's *Monell* claims was not warranted at the motion to dismiss stage, where plaintiff had plausibly alleged a persistent and widespread practice regarding the freezing temperatures in his cell, including alleged municipal policies of maintaining freezing cell temperature and specific facts related to his own experience); *see also Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (noting that correctional officials have an affirmative obligation to protect inmates from infectious disease). Accordingly, Defendant's motion to dismiss Plaintiff's claim that the City violated Plaintiff's Fourteenth Amendment rights by repeatedly housing him with detainees with active-TB is denied.

### 3. Leave to Replead

Because Plaintiff is pro se, he is given leave to replead to add individual defendants to the deliberate indifference to conditions of confinement claim, adding those individuals who were responsible for Plaintiff's housing assignments (between December 2014 and July 2015) with inmates who had tested positive for TB before he himself had tested positive. *See* Fed. R. Civ. P. 15(a)(2) (instructing courts to "freely give leave" to amend a complaint "when justice so

requires"); *accord Lainez v. Roycroft*, No. 18 Civ. 6754, 2019 WL 4934009, at *4 (S.D.N.Y. Oct. 7, 2019) (granting pro se plaintiff leave to amend his complaint and replead his deliberate indifference claim). The claim should be pleaded in the alternative in the event Plaintiff's housing assignments were not the product of a City policy or custom, but instead resulted from ad hoc decisions of the individual defendants. If Plaintiff does not know the names of these individuals, he should name them "John and Jane Doe." Plaintiff shall file any amended Complaint within one month of the date of this Opinion by mailing it to the Court's Pro Se Intake Unit at 500 Pearl Street, Room 200, New York, New York 10007. If Plaintiff fails to file an Amended Complaint or seek additional time to do so by April 27, 2020, the Court may deem Plaintiff to have abandoned this claim. A *Valentin* order directing Defendant to identify the Doe Defendants will issue separately in the event Plaintiff adds them to the Complaint.

### B. Deliberate Indifference to Medical Care Claim

A similar two-prong analysis applies to a claim for deliberate indifference to medical needs under § 1983. *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006); *accord Johnson v. Schiff*, No. 17 Civ. 8000, 2019 WL 4688542, at *11 (S.D.N.Y. Sept. 26, 2019). For the objective prong, two inquires determine whether a deprivation of medical care is objectively serious. *Salahuddin*, 467 F.3d at 279; *accord Johnson*, 2019 WL 4688542, at *11. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279; *accord Johnson*, 2019 WL 4688542, at *11. Because prison officials are required to provide only "reasonable care," they are liable only if they fail "'to take reasonable measures' in response to a medical condition." *Salahuddin*, 467 F.3d at 279-80 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *accord Johnson*, 2019 WL 4688542, at *11. The second inquiry is "whether the inadequacy in medical care is sufficiently serious," *Salahuddin*, 467 F.3d

at 280, and where the offending conduct is the medical treatment itself, "the seriousness inquiry is narrower." *Id.*; *accord Johnson*, 2019 WL 4688542, at *11. Under the *mens rea* prong, a pretrial detainee must show a defendant "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[] . . . knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *accord Johnson*, 2019 WL 4688542, at *12.

The Complaint's allegations regarding deliberate indifference to medical needs are belied by information from Plaintiff's medical records, integral to the Complaint, that CHS medical staff was responsive to his medical needs, reviewed and communicated negative test results to Plaintiff; informed Plaintiff when he tested positive soon after the tests were taken; initiated Plaintiff's preventative treatment on August 31, 2015, and monitored his condition; temporarily ceased his treatment when he developed side effects until they subsided, and then recommenced his treatment with another medication until his treatment was successfully completed.

Accordingly, Plaintiff's claim for deliberate indifference to medical needs is dismissed, as the Complaint fails to allege facts that establish Plaintiff was actually deprived of adequate medical care. *See Warren v. City of New York*, No. 18 Civ. 4410, 2020 WL 353772, at *4 (S.D.N.Y. Jan. 21, 2020) (dismissing pro se plaintiff's claim that defendants were deliberately indifferent to his medical needs, where, among other factors, plaintiff's illness was treated by doctors the morning after he fell ill); *Rutherford*, 2020 WL 550701, at *6 (concluding the same where, among other factors, medical staff provided plaintiff continuous treatment for hand and wrist pain).

## IV. CONCLUSION

For the foregoing reasons, the motion is GRANTED as to Plaintiff's deliberate indifference to medical needs claim and DENIED as to Plaintiff's deliberate indifference to conditions of confinement claim based on Defendant's policy or custom.

Plaintiff is GRANTED leave to file an Amended Complaint to add additional defendants and claims against them as set forth above, by mailing it to the Court's Pro Se Intake Unit at 500 Pearl Street, Room 200, New York, New York 10007 by April 27, 2020. If Plaintiff fails to file an Amended Complaint or seek additional time to do so by April 27, 2020, the Court may deem Plaintiff to have abandoned this claim. A *Valentin* order directing Defendant to identify those responsible for Plaintiff's housing assignments will issue separately in the event Plaintiff names John and Jane Doe Defendants.

Defendant is respectfully directed to mail a copy of this Opinion and Order to pro se Plaintiff.

The Clerk of Court is respectfully directed to close the motion at Docket No. 26.

Dated: March 26, 2020
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**